The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 8, 2026

**NO. S-1-SC-40763**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**ADRIAN DONTAE CAUSEY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**BACON, Justice.**

{1}     This appeal arises out of the district court's order granting Adrian Causey's (Defendant) amended motion to suppress evidence gathered from the warrantless search of an automobile in Texas, in which Defendant was the passenger. The district court suppressed the evidence based on the application of New Mexico's exclusionary rule to the search at issue. The parties have asked this Court to rule on an issue of first impression: whether New Mexico's constitutional law, including its exclusionary rule, applies to a search conducted in another state which would be proper under that state's constitutional law.

{2}     We conclude the district court appropriately chose to apply Article II, Section 10 of the New Mexico Constitution to the exclusion of evidence in a New Mexico court.

**I.      BACKGROUND**

**A.      Factual History**

{3}     The parties have stipulated to the following facts. On January 15, 2017, Tobi Stanfill and Daryl Young (Victims) were shot and killed in Bernalillo County, New Mexico. Two days later in Wheeler County, Texas, Deputy Sheriff Jeff Baker (Deputy Baker) initiated a traffic stop for equipment failure. The car had a New

Mexico license plate and was registered to the Driver. Defendant was in the front passenger seat of the vehicle.

{4}   Deputy Baker asked basic questions of Driver, then asked Driver to exit the vehicle and continued questioning Driver in the front seat of his patrol car. Shortly after, Deputy Baker issued Driver a warning for a defective headlight, advised him to renew his driver's license, and returned Driver's paperwork and license. However, Deputy Baker then asked Driver "if he could talk to him for a few minutes." Driver apparently agreed. Through the course of Deputy Baker's continued questioning, Driver eventually admitted there was a marijuana joint in the vehicle. Deputy Baker then announced on his radio that he intended to do a probable cause search of the vehicle.

{5}   To facilitate the search of the vehicle, Deputy Baker instructed Driver to stand on the side of the patrol car and approached Defendant, who was still in the front passenger seat of the vehicle. After briefly questioning Defendant about drugs and weapons, Deputy Baker patted down Defendant, handcuffed him, and removed a firearm magazine from Defendant's pocket. Deputy Baker again asked Defendant if there was a gun in the vehicle. After Deputy Baker's backup arrived and Defendant was again questioned about a gun being in Driver's vehicle, Defendant admitted there was a gun on the floor behind the front passenger seat. Deputy Baker searched

Driver's vehicle and located a handgun behind the front passenger seat. During the traffic stop, a check on the firearm produced no results, but the firearm was eventually connected to the murders of Victims.

**B.      Procedural History**

{6}      Defendant was indicted on two open counts of first-degree murder, two counts of conspiracy to commit first-degree murder, armed robbery, conspiracy to commit armed robbery, and tampering with evidence. Defendant filed a motion to suppress physical evidence and statements obtained by Deputy Baker in Texas.[1] Defendant's motion argued the warrantless search of the vehicle without an exigent circumstance or consent violated the Fourth and Fourteenth Amendments of the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

{7}      In its reply to the motion to suppress, the State argued that Texas law should apply to the exclusion of the evidence "since the search in question was not related to New Mexico" and that under Texas law the search was lawful. The State also made cursory arguments that Defendant did not have standing to challenge the

---

[1]Defendant's motion to suppress and his amended motion to suppress moved the district court to suppress Defendant's statements to Deputy Baker on *Miranda* grounds. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The district court granted the amended motion to suppress Defendant's statements. Despite its inclusion in the amended motion and order at issue, the State has not contested the suppression of the statements in its appeal to this Court.

search under either Texas or New Mexico law. Defendant amended his motion following the State's response to address standing and developed the facts accordingly.

{8} In its order granting the amended motion to suppress, the district court concluded the admissibility of evidence is governed by the exclusionary rule under Article II, Section 10 before analyzing Defendant's standing. The district court noted neither party was able to point to caselaw elucidating which state's exclusionary rule should apply to a warrantless seizure during a traffic stop in Texas that uncovered evidence the State sought to use in a criminal prosecution in New Mexico. However, the district court analogized the circumstances in this case to those in two New Mexico cases, *State v. Snyder*, 1998-NMCA-166, 126 N.M. 168, 967 P.2d 843, and *State v. Cardenas-Alvarez*, 2001-NMSC-017, 130 N.M. 386, 25 P.3d 225, dealing with evidence seized at border-patrol checkpoints within New Mexico by federal border patrol agents. In both cases, the Courts concluded protection of personal privacy would be best effectuated by denying the state the use of evidence that resulted from an unreasonable search or seizure. *Snyder*, 1998-NMCA-166, ¶ 1; *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 18.

{9} Under Article II, Section 10 the district court then found that Defendant did not have standing to challenge the search of the vehicle but did have standing to

challenge his own unlawful detention and the seizure of the firearm. Finally, the district court granted Defendant's amended motion to suppress, concluding that the warrantless search violated Article II, Section 10 and that no evidence was presented that would indicate the evidence seized was purged of its primary taint.

{10} The State appealed the district court's order granting the amended motion to suppress, arguing the district court erred in applying New Mexico's exclusionary rule and the caselaw the district court relied upon was distinguishable. Meanwhile, Defendant argues the exclusionary rule in New Mexico is "not merely a 'judicial remedy'" and the district court was correct in applying the logic of *Snyder* and *Cardenas-Alvarez* in this new context.

## II.    DISCUSSION

{11} We review the ruling by the district court on Defendant's amended motion to suppress "to determine whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171 (internal quotation marks and citation omitted). "While we afford de novo review of the [district] court's legal conclusions, we will not disturb the [district] court's factual findings if they are supported by substantial evidence." *Id.* Additionally, we review questions regarding

the application of our state constitutional provisions against the overreach of out of state actors de novo. *See, e.g.*, *Snyder*, 1998-NMCA-166, ¶ 6.

{12}    At its core the State's appeal from the district court's order asks us to consider if the district court applied the correct law in its analysis of the amended motion to suppress. In other words, was the district court correct to apply New Mexico constitutional law based on the reasoning in *Snyder* and *Cardenas-Alvarez* rather than Texas constitutional law? The State argues those cases—*Snyder* and *Cardenas-Alvarez*—are distinguishable and asks us instead to adopt the reasoning in the special concurrences of *Snyder* and *Cardenas-Alvarez*. The State further argues (1) Defendant consented to the application of Texas law and (2) the application of New Mexico's exclusionary rule to evidence obtained in another jurisdiction will lead to impracticable results.[2]

---

[2]Despite addressing Defendant's standing in district court, neither party raised the issue in their respective briefing before this Court. Our jurisprudence describing standing related to a search or seizure is not harmonious. *See, e.g.*, *State v. Van Dang*, 2005-NMSC-033, ¶ 7, 138 N.M. 408, 120 P.3d 830 (describing standing as a threshold issue for challenges to the constitutionality of a vehicle search); *State v. Porras-Fuerte*, 1994-NMCA-141, ¶¶ 8-10, 12, 119 N.M. 180, 889 P.2d 215 (raising standing sua sponte in its calendar; explaining that because standing is not jurisdictional and the failure to raise it in the district court prevents a defendant from developing the factual record it may be deemed waived; then holding "standing may not be raised for the first time on appeal" but declining to hold the state waived the issue); *State v. Sanders*, 2024-NMCA-030, ¶ 9, 545 P.3d 1176 (noting the state raised standing for the first time on appeal and reaching the issue to hold the defendant had standing). The variation prompted this Court to require supplemental

{13} This is an issue of first impression. Accordingly, to support its application of Article II, Section 10 to the search in this case, the district court relied on analogous but distinguishable caselaw related to the legality of searches and seizures at border patrol checkpoints. The district court extrapolated the language, rationale, and precedent in *Snyder* and *Cardenas-Alvarez* to conclude the laws of New Mexico should apply to the search at hand.

{14} The State contends this reliance was in error for three reasons: the more appropriate reasoning in *Snyder* and *Cardenas-Alvarez* is within their respective special concurrences, by entering another state a defendant consents to having that state's constitutional law applied in criminal proceedings before a New Mexico

---

briefing to address standing and whether the State had waived the issue. Ultimately, we decline to consider standing in light of the State's admission that it failed to raise it on appeal and its implication that it forfeited the issue, instead exercising our discretion to address the narrow issue raised by the State. Accordingly, we do not review the district court's findings of fact, application of law, or conclusion that Defendant has standing. Moreover, as the State has failed to meaningfully challenge the merits of the search and seizure in both the district court and on appeal, including whether any taint had been purged, we similarly decline to address that issue. The State's failure to raise and adequately develop these issues has resulted in an insufficient record to address them on appeal, particularly as it relates to the issues of plain view doctrine or inevitable discovery. Instead, we address the only question the State did bring before our Court: "whether the district court erred in suppressing the firearm based on the application of New Mexico law, rather than Texas law, to the warrantless automobile search that occurred in Texas."

court, and the application of Article II, Section 10 leads to impracticable results. We disagree with each proposition and address them in turn.

**A.  The Rationale in *Snyder* and *Cardenas-Alvarez* is Analogous to the Circumstances Here and We Decline to Adopt the Reasoning of the Special Concurrences**

{15}  Both *Snyder* and *Cardenas-Alvarez* ultimately held that Article II, Section 10 applies to a federal border patrol agent's search and seizure when the state seeks to introduce the resulting evidence in a New Mexico state court. *Snyder*, 1998-NMCA-166, ¶ 18; *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 22. Both cases are factually distinguishable in that they implicate the relationship between the federal sovereign and a state sovereign, where the case here implicates two state sovereigns. *Snyder*, 1998-NMCA-166, ¶ 1; *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 1. However, we, like the district court, find the rationale instructive and the concerns of the special concurrences unfounded.

**1.  The New Mexico exclusionary rule is grounded in effectuating the constitutional rights of individuals and is therefore applicable where out-of-state evidence is introduced in a New Mexico court**

{16}  In *Snyder*, the Court of Appeals wrestled with the application of a defendant's right to be free from unreasonable search and seizure under Article II, Section 10 where the defendant's truck was subject to a warrantless search by federal agents at a fixed border patrol checkpoint in New Mexico. 1998-NMCA-166, ¶ 1. The Court

of Appeals explained "that state law generally does not govern the conduct of federal agents" and for that reason, "the fact that a provision of the New Mexico Constitution affords broader protection against unreasonable searches and seizures than its federal counterpart generally is irrelevant where the question arises in *federal court* in response to a *federal charge*." *Id.* ¶ 10 (internal quotation and citation omitted) (emphases added). However, the Court of Appeals had to grapple with how Article II, Section 10 applies when charges are brought against a defendant in a *New Mexico state court* for violating *New Mexico law*. *Id.* ¶ 11. The Court of Appeals concluded the admissibility of evidence in a case "in the courts of the State of New Mexico is governed by the exclusionary rule under Article II, Section 10." *Id.* ¶ 11.

{17} To support its conclusion, the Court of Appeals identified and relied on the principles to be served by New Mexico's exclusionary rule and then evaluated how those principles would be served by exclusion. *Id.* ¶ 12. Although the Court of Appeals acknowledged "the application of state exclusionary rules will have little or no deterrent effect on the conduct of federal agents for the simple reason that state constitutions do not control the actions of other sovereigns," it made clear that the crux of New Mexico's approach to the exclusionary rule under Article II, Section 10 rests "not on deterrence or judicial integrity," nor is it treated as a judicial remedy. *Id.* ¶¶ 14-15 (internal quotation marks and citation omitted). "[I]nstead, our focus is

to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." *Id.* (internal quotation marks and citation omitted). In this way, the New Mexico exclusionary rule is uniquely situated because suppression of tainted evidence does not rest only on such suppression altering "the behavior or policies of law enforcement officials." *Id.* ¶ 15.

{18}   Three years after *Snyder*, this Court contended with the same question in *Cardenas-Alvarez*. 2001-NMSC-017, ¶ 17. In that case, the defendant, a resident alien driving a friend's truck through a fixed border patrol checkpoint, moved to suppress evidence presented in a New Mexico court that was seized when a federal agent extended the stop. *Id.* ¶¶ 2-5. The *Cardenas-Alvarez* Court held the federal agent "did not violate the United States Constitution, [but] he did violate Article II, Section 10 of the New Mexico Constitution" when he prolonged the defendant's detention absent any reasonable suspicion, and therefore the evidence had to be suppressed in state court. *Id.* ¶¶ 5, 21-22.

{19}   The Court considered "whether the actions of federal agents [could] implicate the protections of the New Mexico Constitution for purposes of determining the admissibility of evidence in state court." *Id.* ¶ 17. At the outset, the Court acknowledged Article II, Section 10 "is an expression of the fundamental notion that every person in this state is entitled to be free from unwarranted governmental

intrusion." *Id.* ¶ 18 (internal quotation marks and citation omitted). Moreover, the Court echoed the Court of Appeals in emphasizing the "purpose of the exclusionary rule is not to deter or ensure judicial integrity, but to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." *Id.* (internal quotation marks and citation omitted).

{20} However, the *Cardenas-Alvarez* Court went further in its analysis to point out neither the text of Article II, Section 10 nor our jurisprudence support a mandate "to selectively protect New Mexico's inhabitants from intrusions committed by state but not federal governmental actors." *Id.* Nor did the Court find such a limitation appropriate. *Id.* The Court concluded a federal agent who wields their powers unreasonably commits the precise "unwarranted governmental intrusion" against which Article II, Section 10 was designed to protect. *Id.* (internal quotation marks and citation omitted). Accordingly, the Court held that when a federal agent effectuates an unwarranted governmental intrusion and the state proffers the evidence stemming from that intrusion in state court, it is subject to the New Mexico exclusionary rule. *Id.*

{21} The State contends *Snyder* and *Cardenas-Alvarez* are distinguishable because the searches and seizures in both cases occurred within the physical borders of New Mexico, albeit at federal border patrol checkpoints. We find the reasoning of both

cases applicable to the circumstances before us. We cannot say the text of Article II, Section 10 or our relevant jurisprudence limits the application of that constitutional provision to unwarranted governmental intrusions committed within the state itself. Nor do we find a meaningful distinction pursuant to Article II, Section 10 between the actions of federal agents operating under and effectuating distinct federal standards in their discrete jurisdictional sphere, regardless of occurring *within* New Mexico's geographical borders, and the actions of other states' agents operating under and effectuating those states' distinct standards in their discrete jurisdictional sphere occurring *outside of* New Mexico's borders.

{22}   Article II, Section 10's protection against unreasonable searches and seizures—whether applied to the actions of federal agents, Texas agents, or any other non-New Mexico agent—remains a fundamental constitutional right entitling individuals freedom from unwarranted governmental intrusion and is effectuated by the exclusion of evidence that results from such intrusion when proffered in New Mexico courts. *Snyder*, 1998-NMCA-166, ¶ 15; *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 18. "'Denying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's

officers had stayed within the law.'" *Snyder*, 1998-NMCA-166, ¶ 16 (quoting *State v. Gutierrez*, 1993-NMSC-062, ¶ 55, 116 N.M. 431, 863 P.2d 1052).

{23} While it is certainly true the laws of our state generally do not govern the conduct of out-of-state agents, as they also do not govern the conduct of federal agents, the evidence at issue has still been proffered by the State in its prosecution of Defendant in a New Mexico state court for violating New Mexico's criminal statutes. As was the case in *Cardenas-Alvarez*, our application of state constitutional standards to determine the admissibility of evidence in a New Mexico state court of evidence which was seized by a non-New Mexico agent will not affect any prosecution that might be brought against Defendant in another jurisdiction, nor does it circumscribe the activities of those agents. Moreover, we do not claim the authority to constrain the activities of agents of other sovereigns, here Texas law enforcement; however, "we do possess the authority—and indeed *the duty*—to insulate our courts from evidence seized in contravention of our state's constitution." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 19 (emphasis added).

**2.      The reasoning in the special concurrences is inapposite**

{24} The State asks us to adopt the reasoning of the special concurrences in *Snyder* and *Cardenas-Alvarez*, primarily suggesting the special concurrences tie the New Mexico exclusionary rule to our geographic borders but providing little to no

analysis concerning why the reasoning in the special concurrences provides a sound path for this Court. The State relies heavily on Chief Judge Hartz's special concurrence in *Snyder* to support the proposition that Article II, Section 10 applies only within the state of New Mexico. However, the State misunderstands the fundamental premise: Chief Judge Hartz explained that in his view Article II, Section 10 applies "only to the sovereign governed by the constitution in which it appears[—]the State of New Mexico" and accordingly it only prohibits the state from making searches and seizures that are unreasonable under that provision. *Snyder*, 1998-NMCA-166, ¶ 29 (Hartz, C.J., specially concurring). This is because the purpose of a bill of rights within a sovereign's constitution "is to protect against abuse of power by that sovereign." *Id.* ¶ 28 (Hartz, C.J., specially concurring). Chief Judge Hartz did not link Article II, Section 10 to New Mexico's geographic bounds but rather to the actor performing the search and seizure. *Id.*

{25}    Even if the State had properly relied on Chief Judge Hartz's special concurrence, we are not persuaded by his reasoning. In part, Chief Judge Hartz wondered if application of state law to federal officers may be foreclosed by the Supremacy Clause because "state constitutions do not control federal action," and he found it "highly unlikely" such an application would change the conduct of federal officers. *Id.* ¶¶ 30, 32 (Hartz, C.J., specially concurring) (internal quotation

marks and citation omitted). We find both points misguided. The *Snyder* majority was not concerned with controlling federal actions or deterring federal agents from future unreasonable searches. *Id.* ¶ 14. Importantly, the majority instead recognized that, "unlike the federal exclusionary rule and the laws of some other states, . . . the exclusionary rule under the New Mexico Constitution focuses on the constitutional rights of individuals." *Id.* ¶ 15 (internal quotation marks and citations omitted). Thus, the majority was concerned with enforcing the defendant's rights by constraining the state when it seeks to introduce evidence in a New Mexico state court. *Id.* ¶¶ 11, 15, 18.

{26} The State does not engage with Chief Judge Hartz's additional arguments that application of Article II, Section 10 to evidence seized by federal agents is misguided because (1) "neither [federal agents] nor the United States [government] could be sued for damages for violating [Article II, Section 10]" in the event no evidence is found, and (2) exclusion of evidence under Article II, Section 10 "would not vindicate any rights of the person subjected to the search and seizure" because it does not apply, thus no right is violated, and therefore no right needs effectuating. *Id.* ¶¶ 33-35 (Hartz, C.J., specially concurring). However, we address both briefly.

{27} We find Chief Judge Hartz's damages argument flawed because in a search by federal agents, the application of Article II, Section 10 is triggered by the

introduction of evidence in a New Mexico state court. Therefore, in the event no evidence is found in an otherwise lawful border patrol search, then no evidence would be introduced in a New Mexico state court, thereby triggering our exclusionary rule; it would merely be a search at a federal checkpoint, by federal agents, presumably for federal objectives, and thus New Mexico would never be implicated.

{28} Moreover, we find the argument that Article II, Section 10 does not apply concerning. Chief Judge Hartz points to a New Jersey Supreme Court case to explain "'the application of the state constitution to the officers of another jurisdiction would disserve the principles of federalism and comity'" with "'no purpose of deterrence relating to the conduct of state officials is frustrated,'" and "'no citizen's individual constitutional rights fail vindication because no state official or person acting under color of state law has violated the [s]tate [c]onstitution.'" *Id.* ¶ 35 (Hartz, C.J., specially concurring) (quoting *State v. Mollica*, 554 A.2d 1315, 1327-28 (N.J. 1989)). We disagree. Our precedent has been quite clear that Article II, Section 10 protects individuals and deterrence is a secondary consideration. *Id.* ¶¶ 15-16. To permit the introduction of evidence obtained by federal agents in a New Mexico state court which violates the New Mexico Constitution would be to revisit the silver-platter doctrine in a new context, undoubtedly failing to vindicate the rights of the

accused.[3] Accordingly, we decline to adopt the reasoning in the *Snyder* special concurrence.

{29} As for the special concurrences in *Cardenas-Alvarez*, we find the State's analysis to be lacking. To the extent the special concurrences by Chief Justice Serna and Justice Baca express doubt that the New Mexico Constitution can apply to the conduct of federal agents, we again emphasize our holding constrains the state's ability to use evidence for prosecution in New Mexico courts and does not seek to control or deter the conduct of other sovereigns. *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 25 (Baca, J., concurring in result); *id.* ¶¶ 75-76 (Serna, C.J., concurring in result); *Snyder*, 1998-NMCA-166, ¶¶ 11, 14-15. Moreover, to the extent the special concurrences express concerns about how the Court's holding bears on the Supremacy Clause and principles of federalism, we find those discussions of little relevance to the case at hand, which implicates a search conducted by Texas law

---

[3]The silver-platter doctrine provides that "illegally seized or discovered evidence by state agents could be admitted as evidence in a federal criminal prosecution because federal law was not directed to state officials and did not violate the Federal Constitution." 1 Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Criminal* § 33:11 (2025-2026 ed.). "Once the Fourth Amendment was held to apply to the States as well as the Federal Government, the silver-platter doctrine was scuttled. The doctrine was based on the fact that the state searches to which it applied did not at that time violate federal law." *Id.* n.1. Applied in this context, the State would be an improper beneficiary of silver-platter evidence served up from a search or seizure in violation of our own constitutional standards.

enforcement. *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 29 (Baca, J., concurring in result); *id.* ¶ 77 (Serna, C.J., concurring in result). Accordingly, we decline to adopt the reasoning in the special concurrences in *Cardenas-Alvarez*.

**B.      Defendants Do Not Consent to the Application of Out-of-State Law in New Mexico Courts**

{30}     The State seemingly argues in the alternative that once Defendant entered Texas, he consented to be subject to Texas law and such consent is an exception to the Fourth Amendment's probable cause and reasonable suspicion requirements. Such a position conflates consent to a jurisdiction's laws with consent for law enforcement to perform a warrantless search. These types of consent are wholly distinct from one another, and to suggest by merely stepping into Texas a defendant has consented to a warrantless search therein is patently false.

{31}     In its best light, the State's argument is that by voluntarily entering Texas, Defendant consented to be governed by Texas law and procedures and by doing so, when charged in New Mexico Defendant did not retain his Article II, Section 10 protections. Without citation to any authority, the State contends where a stop, search, and/or arrest occurs lawfully in one state, the lawfulness of the stop, search, and/or arrest should be recognized by other states and failure to permit such recognition will punish the state of New Mexico. This argument is flawed.

{32}     The question before this Court is whether Article II, Section 10 requires the exclusion of evidence gathered outside the state in conformance with that state's constitutional law but in violation of Article II, Section 10. New Mexico law is clear that when a defendant faces charges in a New Mexico court, their individual rights are protected by the New Mexico Constitution. *Snyder*, 1998-NMCA-166, ¶ 15. While it is true an individual subjects themselves to the laws of another state when entering that state, it does not stand to reason that those laws follow them to New Mexico and through the judicial process in our state courts. Defendant is charged in a New Mexico state court for allegedly violating New Mexico law, and while he may have been subject to Texas law while in Texas, he is no longer there. To imbue Texas law on a case otherwise completely dictated by New Mexico law would be nonsensical based only on Defendant's brief dalliance there. This serves not as a punishment to the State, but as a protection afforded to all criminal defendants subject to unreasonable searches and seizures who find themselves in a New Mexico court.

**C.     The Application of Article II, Section 10 in New Mexico Courts Does Not Lead to Impracticable Results**

{33}     Finally, we address the State's assertion that our holding operates as a blanket refusal to admit lawfully obtained evidence leading to impracticable results. To be clear, our holding today should not be interpreted as a bar on the admission of all

evidence obtained outside of New Mexico by non-New Mexico agents. To the contrary, the State can proffer evidence gathered outside of New Mexico by another jurisdiction's law enforcement agency so long as that evidence is lawfully obtained under Article II, Section 10.

{34}    Moreover, we fail to see the impracticable results the State cautions against. The State offers several hypothetical situations to elucidate the impracticability of applying Article II, Section 10 in New Mexico courts where evidence is gathered elsewhere by various non-New Mexico entities or people. As none of those circumstances are relevant to the narrow question before us—whether the district court erred in applying New Mexico law, rather than Texas law, in its order granting Defendant's motion to suppress—we find it unnecessary to address them.

{35}    As for the impracticable results in similar circumstances—in other words where evidence is gathered in another state by that state's law enforcement in violation of Article II, Section 10—the State alleges criminal defendants could escape meaningful prosecution, thereby rewarding criminals. We find this argument problematic for two reasons: (1) suppression of evidence seized in violation of Article II, Section 10 does not foreclose prosecution of criminal defendants, and (2) Article II, Section 10 is intended to protect individuals from unreasonable search and seizure, including defendants who have yet to be proven guilty.

{36} In relation to the alleged impracticable results in Defendant's case, the State correctly asserts in its briefing that the purpose of the New Mexico exclusionary rule is to protect citizens from unreasonable government interference. Despite this, the State seemingly argues that the purpose of the rule is not effectuated by suppressing the firearm because no New Mexico official engaged in the unreasonable search and seizure. The State goes on to imply the result of the district court's order is impracticable because the practical effect "rewards" Defendant. Again, we disagree.

{37} As discussed above, and observed by the State, Article II, Section 10 protects against unreasonable *government* interference. We do not interpret this constitutional protection to apply narrowly against our state government given the provision's plain language, our relevant jurisprudence applying Article II, Section 10 to evidence introduced in a New Mexico court stemming from a federal border patrol search, and our extensive jurisprudence concerning our state's desire to effectuate the constitutional rights of individuals. Finally, we hardly think enforcing Defendant's constitutional right could be hailed as a "reward[]." The New Mexico Constitution, including Article II, Section 10, provides fundamental rights for New Mexicans. To consider the district court's grant of Defendant's motion to suppress a "reward[]" is misguided because Defendant merely sought to enforce a right he

already had, and we cannot say such enforcement of a constitutional right is impracticable.

## III.   CONCLUSION

{38}   As a result, we hold Article II, Section 10 applies to defendants in New Mexico courts and when the State proffers evidence gathered by another state's agents obtained in violation of Article II, Section 10 it is inadmissible in New Mexico state courts. Accordingly, because the district court correctly determined that New Mexico law applies to the evidence at issue, we will not overturn the district court's order.

{39}   **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**JULIE J. VARGAS, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**BRIANA H. ZAMORA, Justice**